**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHARLES L. LIGHT, | ) | |
| | ) | |
| Plaintiff (*Pro Se*), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAREN G. MILLS, Administrator, | ) | 08-cv-1074 (RCL) |
| U.S. Small Business Administration | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

This action was filed by plaintiff Charles Light alleging that his application for employment with the Small Business Administration (SBA) was rejected in retaliation for his prior EEO activities, violating Title VII of the Civil Rights Act of 1964, as amended. On September 28, 2012, this Court entered an order [62] granting defendant's motion for summary judgment [57]. This Memorandum Opinion explains the reasoning behind the September 28, 2012 Order.

## II. BACKGROUND

Plaintiff was employed as an attorney and temporary employee at SBA beginning in February 7, 1994. Pl. Br. at 2; Def. Statement of Material Facts ¶ 2.[1] Soon after beginning work, one of his female co-workers, Elizabeth Parry, complained to their first-line supervisor, Chet Rewers, that plaintiff was engaging in "verbal conduct of a sexual nature which she found offensive." Pl. Br. at 2-3; Def. Statement ¶ 4. Rewers informed a higher level supervisor, Gary

---

[1] Plaintiff's Separate Statement of Material Facts does not address defendant's ¶¶ 2-4. Plaintiff seems to have erroneously left out page two of this statement. Accordingly, these statements will be taken as conceded by plaintiff except insofar as they are challenged in plaintiff's briefs.

Appelt, who contacted Parry. Def. Statement ¶ 4. On Appelt's request, Parry wrote a memorandum detailing plaintiff's offensive comments, which included: (1) a derogatory comment about the meaning of "T&A"; (2) a reference to "taking advantage of the opportunity to open [a] woman's blouse to 'push her buttons,'"; and (3) a statement that plaintiff "thought it was sexual harassment whenever a woman left the house without a veil." Def. Statement ¶ 4; Def. Ex. G, Parry Memorandum. Appelt reprimanded plaintiff for his conduct. Pl. Br. at 3. On August 30, plaintiff made another comment that offended Parry: about the "type" of woman who could be sexually harassed, and she complained again to Appelt. Pl. Br. at 3; Def. Statement ¶ 6-8. On the 31st, Appelt lectured all employees in his section about sexual harassment. Def. Statement ¶ 9. The next day, "certain unnamed co-workers approached" Rewers, and accused plaintiff of disrupting the workplace. Pl. Br. at 4. Rewers shared that information with Appelt and Moser. Pl. Br. at 4.

On September 9, plaintiff was given a letter informing him that his temporary appointment at SBA would not be renewed, and his employment would conclude on September 24. Pl. Br. at 4; Def. Statement ¶ 13. On September 14, plaintiff submitted a notice of constructive discharge letter to Appelt and another supervisor, Richard Moser, copying others at SBA, in which he complained that his employers failed to investigate Parry's "false and malicious accusations of sexual harassment against me"; that "one comment . . . over coffee in our workplace has led to my termination"; that he too has been the victim of sexual harassment and a hostile workplace; that Mr. Appelt was "malicious"; that both Appelt and Moser brought "great discredit" on the SBA and the legal profession as a whole; and that they had both "forgotten what it means to be a lawyer." Pl. Ex. 1. Plaintiff did not return to work after submitting this letter.

2

Plaintiff pursued claims of gender discrimination, retaliation, and constructive discharge against the SBA through administrative and judicial channels. In a January 18, 2001 opinion, a district court in the Eastern District of California entered summary judgment in favor of defendant on all of plaintiff's claims. Def. Ex. A, *Light v. Alvarez*, Civil Action No. S-99-0778, Memorandum Opinion and Order (E.D. Cal. Jan 18, 2001) (FCD/PAN);.

On August 18, 2004, plaintiff submitted an application for a job advertised on the SBA website. Pl. Br. at 5; Def. Ex. K, Light's Application. On September 15, plaintiff called the SBA and was notified that his application had been rejected. Pl. Br. at 6. It is SBA policy that whenever a former employee in plaintiff's position applies for new position with the agency, the agency will review that employee's record in the "blue card" system to ensure there are no prior conduct or performance problems. Def. Statement ¶ 16; Def. Ex. L, Affidavit of Charles L. Light at 2. Plaintiff learned in his phone call with SBA that his name had been "red-flagged" when it had been run through the "blue card" database, and was referred to Allan Hoberman, director of personnel, for a decision. Pl. Br. at 6; Def. Statement ¶ 15; Def. Ex. L, Affidavit of Charles L. Light ("There is evidence that my blue card database record was checked."). Plaintiff contacted Hoberman, who informed plaintiff over the phone that his application had been denied for "conduct" reasons. Pl. Br. at 6. On October 6, 2004, after receiving plaintiff's written requests for written explanation of the adverse decision, Hoberman responded to plaintiff in a letter, Pl. Ex. 5, explaining the agency's decision not to rehire plaintiff. The letter explains that the decision "was based upon [the agency's] experience with [plaintiff] for the brief seven-month appointment [he] had in Sacramento" which was "recorded in our data base referred to as our 'blue card' system." Pl. Ex. 5. Hoberman's letter continued: "[t]he information about your previous employment that we felt was not conducive to your being rehired involved your ability

3

to work with the other employees in the office." Pl. Ex. 5. The letter goes on to refer to plaintiff's September 14, 1994 letter of resignation, in which plaintiff "made allegations about the management in the Sacramento office which were neither correct or constructive" and which the agency now found "indicative of [plaintiff's] inability to work within the management frame work" of the agency. Pl. Ex. 5.

The parties disagree about the information Hoberman relied on when he decided not to rehire plaintiff. Defendant claims that: "In making the decision not to rehire [plaintiff], Hoberman considered negative comments in [his] prior employment records, his conversation with an Agency official familiar with [plaintiff's] 1994 employment, and [plaintiff's] resignation letter, all of which confirmed his honest belief that [plaintiff] had difficulty working with other employees and supervisors and should not be hired." Def. Br. at 7. Specifically, defendant claims that plaintiff's application was referred to Hoberman after a review of his blue card by screening personnel showed negative information, Def. Statement ¶ 16; that Hoberman reviewed this blue card, Def. Statement ¶ 18; that the blue card indicated that plaintiff had "demonstrated conduct issues concerning his inability to get along w/his co-workers & managers," Def. Br. at 8; Def. Statement ¶ 17; and that Hoberman would not have rehired plaintiff even without the blue card based on his own prior knowledge of plaintiff's conduct issues, based in part on his knowledge of the substance and outcome of plaintiff's earlier failed Title VII action. Def. Br. at 8; Def. Statement ¶ 19 (citing Def. Ex. M, Hoberman Affidavit). To compliment this evidence, defendant also offers deposition testimony from three of plaintiff's other supervisors at SBA – Appelt, Rewers, and Moser – all of whom confirm that they would not have rehired plaintiff because of his prior conduct problems. Def. Br. at 13; Def. Statement ¶ 18 (citing Def. Ex. E, Rewers Deposition at 83:1-5; Def. Ex. D, Appelt Deposition at 209:24 – 210:11; Def. Ex. H,

4

Moser Deposition at 100:5-7). In sum, defendant insists that its reasons for declining to rehire plaintiff in 2004 are the same reasons that led it to decline to extend plaintiff's employment in 1994 – reasons which were affirmed by a court in the Eastern District of California in plaintiff's earlier failed Title VII challenge. Def. Br. at 10; *Light v. Alvarez*, Def. Ex. A.

Plaintiff alleges that the decision not to rehire him was made in retaliation for his prior EEO activity. He points to two sources: (1) temporal proximity (about three-and-a-half years) between the conclusion of his Title VII case in January 2001 and his application for employment in August 2004, Pl. Br. at 19; and (2) Hoberman's letter, Pl. Ex. 5, stating that in rejecting plaintiff's application he relied, in part, on plaintiff's notice of constructive discharge letter. Pl. Br. at 21-23 (suggesting Hoberman's conceded reliance on this 1994 letter "constitutes direct evidence of Mr. Hoberman's retaliatory animus"). Plaintiff attempts to rebut defendant's proffered non-retaliatory reason by insisting that defendant's evidence is irrelevant or fraudulent. Pl. Br. at 23-28. Plaintiff argues that the 2001 opinion rejecting his earlier Title VII claim is inadmissible because it was not "considered, or relied upon" by Hoberman when he made the decision to reject plaintiff. Pl. Br. at 8, 24. Plaintiff initially argued that the blue card was entirely inadmissible as a business record, Pl. Br. at 7-14, but subsequently conceded the point in his surreply. Pl. Surreply at 1-2. Plaintiff continues to maintain, however, that the "comments" section of the blue card, which contained references to plaintiff's prior conduct problems, were fraudulently altered on or after the date defendant claims the card triggered the review and rejection of plaintiff's application. Pl. Surreply at 2. Plaintiff also suggests throughout his brief that SBA officials have manipulated the evidence it has proffered in support of its independent and non-retaliatory reason, and lied about the timing that information was conveyed between officials. *See, e.g.,* Pl. Br. at 29 (noting, as to the timing of communications between Hoberman

5

and others upon receiving plaintiff's application and before making the decision, that "it strains credulity that any government agency could work that efficiently"); Pl. Br. at 35-38 (proposing an "alternate scenario" or "hypothesis" in which "Hoberman, knowing nothing about Plaintiff outside of his prior six years of EEO activity, [first] decided . . . that Plaintiff's application would be rejected," then SBA officials artificially constructed a "'scenario' for the proper handling of Plaintiff's application" by forging or altering plaintiff's blue card to justify the rejection post hoc).

## III.  ANALYSIS

### A.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against [an] employee . . . because he has opposed any practice" made unlawful by Title VII or

"has made a charge, testified, assisted or participated in" a Title VII proceeding. 42 U.S.C. § 2000e-3(a). Retaliation claims are governed by a three-step, burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that test, a plaintiff must first establish a prima facie case of retaliation by showing: (1) that he engaged in one of the statutorily protected activities; (2) that he suffered a materially adverse action by his employer; and (3) that there existed a causal link between the two. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). If the plaintiff states a prima facie case, then "the burden shifts to the employer to offer a 'legitimate, nondiscriminatory reason' for its action." *Jones*, 557 F.3d at 678 (quoting *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)). However, the D.C. Circuit has held that where an employer has stated such a legitimate and independent reason, "the court 'need not'-- and should not -- decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id*. (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original)). Instead, "[t]he court should proceed to the question of retaliation *vel non*." *Id*. On summary judgment, a court should "review[] each of the three relevant categories of evidence -- prima facie, pretext, and any other -- to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." *Id.* at 679. "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008).

### B. Plaintiff has Failed To Raise A Genuine Issue of Material Fact As to Defendant's Proffered Non-Retaliatory Reason For Declining to Rehire Plaintiff

Because defendant has advanced a legitimate and independent reason for declining to rehire plaintiff – the same conduct issues that led them to not renew plaintiff's employment in

1994, and which led the court in the Eastern District of California to rule in defendant's favor on plaintiff's Title VII claims in 2001 – the Court will skip analysis of plaintiff's prima facie case, and proceed to determine whether plaintiff has provided sufficient evidence for a reasonable jury to infer this proffered reason is mere pretext for defendant's retaliatory action. *See id.* Because plaintiff has failed to offer more than his own speculative and conclusory allegations that would show defendant's proferred reason to be pretextual, and because plaintiff has presented nothing beyond a mere "scintilla" of evidence of retaliation, the Court finds that plaintiff has failed to meet his burden and will GRANT defendant's motion for summary judgment.

Defendant argues that it declined to rehire plaintiff for the same reasons it declined to extend his employment in 1994: his demonstrated inability to get along with coworkers in the workplace. In support of this proffered reason, defendant provides evidence and testimony that plaintiff's application was referred to Hoberman because a review of plaintiff's blue card showed negative information, Def. Statement ¶ 16 (citing Def. Ex. M & N); that Hoberman subsequently reviewed this blue card, Def. Statement ¶ 18 (citing Def. Ex. I, Hoberman Deposition, 63:3-64:5); that the blue card indicated that plaintiff had "demonstrated conduct issues concerning his inability to get along w/his co-workers & managers," Def. Br. at 8; Def. Statement ¶ 17 (citing Def. Ex. N); that Hoberman believed that this comment was provided by one of plaintiff's prior supervisors, Def. Reply at 5; Def. Statement ¶ 18 (citing Def. Ex. I, Hoberman Deposition 63:3-64:5); and that this led Hoberman to decline to rehire plaintiff.

Plaintiff's attempts to challenge this evidence by alleging that the document has been manipulated or forged are unsupported by evidence and purely speculative. *See* Pl. Br. at 35-38. For instance, plaintiff suggests that one or more officials in the agency are lying about the information available to Hoberman about plaintiff when he made his decision because "it strains

credulity that any government agency could work that efficiently." Pl. Br. at 29. Similarly, plaintiff's "hypothesis" that someone inside the agency deliberately forged or altered the blue card is unsupported by evidence. Pl. Br. at 35-38. Such merely conclusory statements do not satisfy plaintiff's burden here because they do not raise a genuine issue of material fact sufficient to survive summary judgment. *See Anderson*, 477 U.S. at 247. Because "the employer's stated belief about the underlying facts is reasonable in light of the evidence," and plaintiff has provided no support for his statements, there is "no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

Defendant further argues that Hoberman would not have rehired plaintiff even *without* the blue card because of his own knowledge of plaintiff's conduct issues, based in part on his knowledge of the substance of plaintiff's earlier Title VII action. Def. Br. at 8; Def. Statement ¶ 19. Three of plaintiff's other supervisors – Appelt, Rewers, and Moser – all testified that they would not have rehired plaintiff because of his prior conduct problems. Def. Br. at 13; Def. Statement ¶ 18 (citing Def. Ex. E, Rewers Deposition at 83:1-5; Def. Ex. D, Appelt Deposition at 209:24 – 210:11; Def. Ex. H, Moser Deposition at 100:5-7).

Plaintiff's objections to this argument are unavailing. He protests that the 2001 opinion should be deemed inadmissible because Hoberman did not directly rely on it in making his decision. Pl. Br. at 8, 24. But, even if Hoberman did not pull up the full text of the opinion, he may still have relied on his own memories of the litigation and its conclusion from his own participation in it, including the central conclusion of the litigation: that plaintiff's employment had been legitimately terminated in 1994 as a result of plaintiff's inability to get along with his co-workers, the same reason that motved Hoberman's decision to decline to rehire plaintiff a decade later. *See* Def. Reply at 5-6.

9

Finally, plaintiff's anemic evidence of retaliatory purpose also fails to raise a genuine issue of material fact sufficient to survive summary judgment. Plaintiff's first piece of evidence is the fact that Hoberman was aware of plaintiff's previous EEO activities, including and culminating in a failed Title VII discrimination case against his employer. Pl. Br. at 19. Plaintiff relies on a temporal proximity of three-and-a-half years between the conclusion of his Title VII suit and the adverse action here. This suggests very weak causation, if any. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a 20 month period suggested "no causality at all"). Even if this extended time-period were sufficient to state a prima facie case for causation, it cannot, on its own, overcome the direct evidence proffered by defendant in support of their legitimate, non-retaliatory purpose, because a plaintiff must show more than a "scintilla" of evidence to survive summary judgment. *Anderson*, 477 U.S. at 252.

Plaintiff attempts to bolster his case with a second piece of evidence: Hoberman's letter to plaintiff, Pl. Ex. 5, in which Hoberman stated that he relied, in part, on plaintiff's notice of constructive discharge letter when he decided not to rehire plaintiff. Plaintiff alleges that this conceded reliance "constitutes direct evidence of Mr. Hoberman's retaliatory animus." Pl. Br. at 21-23 (citing Pl. Ex. 5). But, while the referenced constructive discharge letter does include potentially protected Title VII activity in the form of plaintiff's bare (and subsequently disproved) allegations of sexual harassment, the full text of Hoberman's letter, when read in context of plaintiff's concededly troubled tenure at the agency makes it clear that Hoberman's reliance on plaintiff's letter was non-retaliatory and in fact in perfect harmony with defendant's legitimate and independent reason proffered here:

> The information about your previous employment that we felt was not conducive to your being rehired involved your ability to work with the other employees in the office. In your own letter of resignation . . . you stated that you left angry and made allegations about the management in the Sacramento office which were neither correct nor

> constructive. This letter is indicative of your inability to work within the management frame work of the DAO 4 legal office. . . .The decision not to rehire you is based solely on our experiences with you in 1994 and your conduct and demonstrated inability to work within the DAO frame work . . . . It was not based on any other activity in which you were engaged.

Pl. Ex. 5. It is clear from this context that Hoberman pointed to plaintiff's angry and contentious 1994 letter as evidence of his demonstrated inability to get along with others in the workplace. Def. Reply at 8. Hoberman relied on this letter as evidence of plaintiff's difficulty with his co-workers and supervisors – the same qualities which had led to his initial non-renewal in 1994, and to the court for the Eastern District of California's 2001 decision rejecting plaintiff's Title VII claims.

*Borgo v. Goldin*, 204 F.3d 251 (D.C. Cir. 2000) is instructive. In that case, a plaintiff/former-employee brought a retaliation claim under Title VII against his former employer, and pointed to testimony in which the former employer identified a letter written by the employee as the "final straw" leading to her termination. *Id.* at 256. Because this letter included allegations of discrimination, the District Court had inferred that this provided sufficient evidence of retaliation to support summary judgment for the plaintiff. The Court of Appeals reversed, noting that the employer "did not state that the paragraph complaining of reverse discrimination was that straw. Nor was the letter a single, unitary complaint of discrimination. Only one paragraph of the letter can be characterized as such a complaint." *Id.* at 257.

As in *Borgo*, the letter here included much more than plaintiff's allegations of sexual harassment – it also included many other statements which lend credence to defendant's position that plaintiff had great difficulty getting along with his colleagues and superiors at the agency. For instance, in the letter, plaintiff complains that his employers failed to investigate Parry's

"false and malicious accusations of sexual harassment against me"; acknowledges that he engaged in conduct which offended his female coworker by noting that "one comment . . . over coffee in our workplace has led to my termination"; complained that Mr. Appelt was "malicious" towards him; and accused both Appelt and Moser of bringing "great discredit" on the SBA and the legal profession as a whole; and that they had both "forgotten what it means to be a lawyer." Pl. Ex. 1. Viewed in the context of this case, Hoberman's reliance on this letter is in perfect harmony with defendant's position that plaintiff had difficulty getting along with his co-workers and does not suggest that Hoberman was operating under a retaliatory purpose.

In sum, defendant here relies on the same reason that caused the agency not to renew plaintiff's employment in 1994, and which led the court in the Eastern District of California, in 2001, to grant summary judgment to defendant on plaintiff's initial Title VII claim. Because plaintiff has failed to raise a genuine issue of material fact as to this proffered reason, this Court will grant defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment was GRANTED in an order filed on September 28, 2012. This case now stands DISMISSED WITH PREJUDICE.

Signed by Royce C. Lamberth, Chief Judge, on October 3, 2012.